# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

IN RE LETTER OF REQUEST      )
FROM ROMANIA            )
IN THE MATTER OF          )   Misc. No. 08-
DEALVARE, ET AL          )

## GOVERNMENT'S MEMORANDUM OF LAW
## IN SUPPORT OF APPLICATION FOR ORDER

This memorandum of law is submitted in support of the Application for an Order pursuant to Title 28, United States Code, Section 1782, in order to execute a  letter of request from Romania.  A copy of the translation is attached.

FACTUAL BACKGROUND:

This investigation is being conducted by the Romanian authorities who are investigating a case of alleged money laundering, fraud and embezzlement.

EVIDENCE SOUGHT:

The Romanian authorities seek information from a company which resides in this District and the Delaware Secretary of State's Office. Thus, the information the Romanians seek may be obtainable here.  The authority for this Court to accede to this request is contained in Title 28, United States Code, Section 1782, which states in part:

   (a)   The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation.  The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application

of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court. By virtue of his appointment, the person appointed has power to administer any necessary oath and take the testimony or statement. The order may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country or the international tribunal, for taking the testimony or statement or producing the document or other thing. To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.

The proper criteria for determining whether the court should exercise its discretion in favor of executing the request are outlined in *In Re Request for Judicial Assistance from the Seoul District Criminal Court*, 555 F.2d 720, 723 (9th Cir. 1977) (citation omitted):

> Under the statute the only restrictions explicitly stated are that the request be made by a foreign or international tribunal, and that the testimony or material requested be for use in a proceeding in such a tribunal.... [and] that the investigation in connection with which the request is made must relate to a judicial or quasi-judicial controversy.

Moreover, " (t)he judicial proceeding for which assistance is sought ... need not be pending at the time of the request for assistance; it suffices that the proceeding in the foreign tribunal and its contours be in reasonable contemplation when the request is made." *In Re Letter of Request from the Crown Prosecution Services of the United Kingdom*, 870 F.2d 686, 687 (D.C. Cir. 1989).

The letter of request in this case shows that the information sought is for use in such proceedings in Romania and hence the request comes well within those circumstances contemplated by Congress in expanding the Federal Courts' authority to act in such matters. *In Re Letter of Request from the Crown Prosecution Service of the United Kingdom*, 870 F.2d 686, 689-91 (D.C. Cir. 1989); *In Re Letters Rogatory from the Tokyo District, Tokyo, Japan*, 539 F.2d 1216, 1219 (9th Cir. 1976). Therefore, I ask this Court to honor the request for assistance.

The reception of letters of request and the appointment of a Commissioner to execute them are matters customarily handled <u>ex parte,</u> and persons with objections to the request raise those objections by moving to quash any subpoenas issued by the Commissioner. *Id.*

**WHEREFORE**, the United States requests that the Court issue an Order, in the form, appended hereto, appointing a Commissioner in order to execute the request for assistance.

Respectfully submitted,

COLM F. CONNOLLY
United States Attorney

BY:

David L. Hall
Assistant U.S. Attorney
1007 N. Orange Street
Wilmington, DE    19801
(302) 573-6277

Dated:

ROMANIA

PUBLIC MINISTRY

PROSECUTOR'S OFFICE

ATTACHED TO THE HIGH COURT

OF CASSATION AND JUSTICE

Directorate for Investigating

Organized Crime and Terrorism

*Bucuresti, B-dul Libertatii no. 14, sector 5,*

*Case File No. 14/D/P/2007*

January 24th, 2008

## TO THE COMPETENT AUTHORITIES
## OF THE UNITED STATES OF AMERICA

*The Romanian Prosecutor's Office Attached to the High Court of Cassation and Justice - the Directorate for Investigating Organized Crime and Terrorism*, sends its greetings to the competent Authorities of the United States of America. On the basis of the provisions of the Treaty between Romania and the United States of America, on Judicial Assistance in Criminal Matters, signed in Washington on May 26th, 1999, *the above mentioned institution has the honor to solicit, by means of a Letter Rogatory, the carrying out of the procedures and activities mentioned in the present request, necessary to conclude the criminal file no. 14/D/P/2007.*

*Through Resolution no. 3/10.01.2008, the criminal proceedings have been initiated in the present case. In this respect, there are carried out investigations related to the commission of the following offences: continuous fraudulent bankruptcy, stipulated in art. 143(2) (a) of Law no.*



1

*85/2006, with the application of art. 41(2) and art. 42 of the Criminal Code, continuous embezzlement, stipulated in art. 215¹ of the Criminal Code, related to art. 41 (2) and art. 42 of the Criminal Code, continuous fraud, stipulated in art. 215 (1)(2)(3) and art. 5 of the Criminal Code, with the application of art. 41(2) and of art. 42 of the Criminal Code, money laundering, stipulated in art. 23 (1)(a) of Law no. 656/2002, constitution and affiliation to an organised criminal group, stipulated in art. 7 of Law no. 39/2003. The persons investigated for the commission of the above mentioned offences are: JOSE ENRIQUE DE ALVARE (BERENGUER), DINICA GABRIELA VIOLETA, TOMA ALINA GEORGIANA, TEODORESCU ANNE-MARIE and TEODORESCU TUDORA.*

In facto, it was collected the following information:

On the 20th of December, 2006, BRD - Groupe Societe Generale S.A., through its legal representatives, filed a criminal complaint against JOSE E. DE ALVARE, as a manager of SC PRISMATOWN SA – an insolvent company, as well as against TOMA ALINA GEORGIANA and DINICA GABRIELA VIOLETA, for the commission of the above mentioned crimes.

By taking into consideration the criminal complaint and the documents attached to it, as well as the investigations carried out within the present case, the following conclusions can be drawn:

On the 16th of March, 1999, the Credit Contract no. 14 was signed between BRD - GSG SA and SC MACRO PRISMA TOWN SA, transformed subsequently into SC PRISMATOWN SA - JOSE E. DE ALVARE, as a procuration holder. By virtue of this contract, the mentioned company was conceded a loan of USD 8 million. This amount was supplemented subsequently thorough additional acts to this contract.

MARIN ANA MARIA
TRADUCĂTOR AUTORIZAT
AUTORIZAȚIE nr. 1094

2

As SC PRISMATOWN SA failed to fulfill its responsibilities, assumed by signing the contract, regarding the repayment of the maturity rates related to the contracted credit, on the 25th of June, 2003, BRD - GSG SA filed the complaint no. 764/2003 at the Court of Bucharest - Commercial Section VII. The above mentioned institution requested the initiation of the judicial reorganization proceeding, stipulated by Law no. 64/1995, republished and amended, against the debtor SC PRISMATOWN SA.

As a consequence, by means of the Commercial Resolution no. 995/28.07.2004, stated final and irrevocable through the Commercial Decision no. 486/26.04.2005 of the Court of Appeal of Bucharest, it was ordered the initiation of the reorganization proceeding related to SC PRISMATOWN SA. In this respect, SC RPT CONSULTING SRL, transformed subsequently into SPPI ROMINSOLV, was appointed as a receiver. The court conceded to the mentioned company the tasks stipulated in art. 18 of Law no. 64/1995, republished, with "total management of debtor's activity".

On the 31st of March, 2003, the Extraordinary Shareholders' Meeting of SC PRISMATOWN SA approved "The Project on Company's Division on the 31.12.2002, with a view to Removing the Patrimony Related to Prisma 2 Building, Half of the Land and Half of the Common Utilities in Joint Possession Share". By means of the mentioned division, the amount of USD 7.422.167 - part of the credit conceded by BRD, passed to SC VISA ELECTROMET SA (company that participated in the division of SC PRISMATOWN SA, accepting one part of the patrimony resulted from the latter company), transformed subsequently into SA SALONUL AUTO VICTORIA SA, in spite of the fact that, in line with one of the conditions included by BRD into the credit contract, SC PRISMATOWN SA was not

MARIN ANA MARIA
TRADUCĂTOR AUTORIZAT
AUTORIZAȚIE Nr. 1034

3

entitled to operate any merger, division, etc. without the bank's previous agreement. The mentioned agreement was not solicited and accepted by the bank.

It should be also mentioned that, at the date of division project's approval, the shareholder SC PRISMATOWN SA was composed of DEVELOPMENT & FINANCIAL SERVICES INC. SUA - 18,2765%; MAC INVESTMENTS INCORPORATION SUA - 25,3082%; FLORIDA SHIPPING LINES LTD SUA – 7,5490%; SC INDUSTRIAL EXPORT SA Bucharest – 25,8255%; SC SIF MUNTENIA SA Bucharest – 1,5098% and the natural persons: PORA MIHAI – 1,6165%; LĂZĂRESCU ZAHARIA – 0,0060%; ȚÂNȚĂREANU ALEXANDRU CRISTIAN - 4,4905%; TEODORESCU ANNE MARIE – 3,6510%; NAR ANDREEA BIANCA FLORENTINA – 0,3973%; CONSTANTIN GEORGES – 6,1846%; MARTINESCU ANDREI MIHNEA – 0,0024%; VARGA GUSTAV LADISLAU – 0,1657%; UCIU GHEORGHE MARIN – 0,6623%; POPESCU IOAN PAUL – 0,9933%; ROȘU ALEXANDRU – 0,3310%; BRATU FLORIN VASILE – 0,9933%; BOTEA MIHAIL – 0,3310.

According to the Annex 1 of the Extraordinary Shareholders Meeting's minutes, organized on the 31st of March, 2003, in the decision process participated the following shareholders, natural persons: PORA MIHAI LĂZĂRESCU ZAHARIA, TEODORESCU ANNE MARIE, NAR ANDREEA BIANCA FLORENTINA, MARTINESCU ANDREI MIHNEA, VARGA GUSTAV LADISLAU, UCIU GHEORGHE MARIN, PĂUNESCU TRAIAN, POPESCU CORNELIU, POPESCU IOAN PAUL, ROȘU ALEXANDRU, BRATU FLORIN VASILE, BOTEA MIHAIL, ȚÂNȚĂREANU ALEXANDRU CRISTIAN – as a shareholder, natural person and representative of MAC INVESTMENTS INCORPORATION



4

SUA, CONSTANTIN GEORGES - as a shareholder, natural person and representative of SC INDUSTRIAL EXPORT SA Bucharest, JOSE ENRIQUE DE ALVARE – as a representative of FLORIDA SHIPPING LINES LTD SUA and of DEVELOPMENT & FINANCIAL SERVICES SUA.

By considering the present situation, at the request of BRD – GSG SA, as a creditor, the Court of Bucharest ordered the initiation of the judicial reorganization proceeding, stipulated by Law 64/1995, against SC SALONUL AUTO VICTORIA SA, on the 6th of May, 2004, through the Commercial Resolution no. 546/06.05.2004.

During the judicial reorganization procedure, and subsequently during the winding-up procedure, the statutory administrator of the two companies, JOSE E. DE ALVARE, did not submit the accounts and management of the mentioned companies to the receiver and, later on, to the liquidator. Consequently, he was unable to draw up the final financial report after the winding-up of the goods, which was part of their patrimony.

On the 22nd of November, 2006, the same affected person/entity filed a complaint at the Prosecutor's Office Attached to the Court of Bucharest, against SC SALONUL AUTO VICTORIA SA, represented by JOSE E. DE ALVARE. The present complaint focused on the same aspects as the complaint filed against the representatives of SC PRISMATOWN SA, but it emphasized their participation in facts' development as representatives of SC SALONUL AUTO VICTORA SA.

On the 09.10.2006, the judicial liquidator, appointed by the court, of SC SALONUL AUTO VICTORIA SA, filed also a complaint against the JOSE E. DE ALVARE – statutory administrator of SC SALONUL AUTO VICTORIA SA - that focused on the same aspects.



5

It should be also mentioned the fact that previously, on the 31.12.2002, SC PRISMATOWN SA (having as main activity the rent of commercial spaces within Prisma Shopping Centre) and SC IMOBILIAR INVEST EXPERT SRL signed a management contract. By virtue of this contract, SC PRISMATOWN SA entitled the former company to manage the building of Prisma Shopping Centre, the commercial spaces, the offices, the outbuildings and annexes which are part of the private property of Prisma. In other words, by signing the present contract, SC PRISMATOWN SA embezzled the whole future income derived from the assets that belonged to the property at that moment.

The above mentioned contract was signed by JOSE E. DE ALVARE, on behalf of SC PRISMATOWN SA, and by TOMA ALINA GEORGIANA, on behalf of SC IMOBILIAR INVEST EXPERT SRL, one of the assistants of JOSE E. DE ALVARE.

Although YE ZHIPPING, a Chinese citizen, was the sole manager and partner of SC IMOBILIAR INVEST EXPERT SA, and TOMA ALINA GEORGIANA acted on his behalf, by using the power of attorney signed by him, JOSE E. DE ALVARE was the person who made all decisions regarding this company.

In accordance with the Additional Act no. 2 to the Management Contract of the 31.12.2002, SC IMOBILIAR INVEST EXPERT SRL was to receive the amount of USD 350 million, plus VAT, monthly, for the developed activity. Nevertheless, most of the amounts remaining from the receipts (the rent related to the commercial spaces of Prisma Shopping Centre and to the lands of the same company), after having paid the providers, SC PRISMATOWN SA, were deposited in the bank account of SC IMOBILIAR INVEST EXPERT SRL. DINICĂ GABRIELA VIOLETA,



6

the personal assistant of JOSE E. DE ALVARE, empowered to operate with company's bank accounts, withdrew the mentioned amount in cash.

On the other hand, on the 10.05.2005 (at that moment, the insolvency procedure of SC PRISMATOWN SA was developing) one contract was signed between SC IMOBILIAR INVEST EXPERT SRL - as a manager of Prisma Shopping Centre - and SC DAFIAQ IMOBILIAR SRL. By virtue of that contract, the latter company was to receive "the right of invoicing for the commercial spaces and for the offices of this shopping area, the right of collecting and paying on behalf and for SC IMOBILIAR INVEST EXPERT SRL". For the developed activities, SC DAFIAQ IMOBILIAR SRL was to receive a given amount each month, which was to be settled subsequently by means of an Additional Act.

Also in this case, the amounts remaining from the receipts, after having paid the providers, SC PRISMATOWN SA and SC IMOBILIAR INVEST EXPERT SRL, were withdrawn in cash by DINICĂ GABRIELA VIOLETA from the bank account of SC DAFIAQ IMOBILIAR SRL or transferred to other commercial companies supervised by JOSE E. DE ALVARE or to natural persons, acquaintances of him.

Subsequently, by means of the Additional Act no. 1 to the Management Contract of the 10.05.2005, signed on the 31.03.2006, SC DAFIAQ IMOBILIAR SRL was replaced with SC DAFIAQ COMERCIAL SRL. The amounts remaining from the receipts, after having paid the providers, SC PRISMATOWN SA, followed the same route as in the case of SC DAFIAQ IMOBILIAR SRL.

These two companies were created as a consequence of the registration applications handed in on the 03.05.2005 by TOMA ALINA GEORGIANA - for SC DAFIAQ IMOBILIAR SRL and by DINICĂ



7

GABRIELA VIOLETA - for SC DAFIAQ COMERCIAL SRL. Both were assigned on the 16.05.2005 to the Moldovian citizens, BROVCENCO PETRU and BODIU VALERIAN, although the founders of these companies did not know personally the transferees. The relations were established through JOSE E. DE ALVARE, the person who made all decisions within these companies, both before and after their assignment.

On the 01.07.2004, JOSE E. DE ALVARE, as a legal representative of SC PRISMATOWN SA, signed a Rent Contract with SC DAFIAQ INTERNATIONAL SRL. As JOSE E. DE ALVARE was an administrator of this company, too, he empowered DINICĂ GABRIELA VIOLETA to sign the contract on his behalf, as a legal representative of SC DAFIAQ INTERNATIONAL SRL.

The object of this contract was "the rent of one 1500 m² space within Prisma Shopping Centre and of one 1500 m² space outside the property, located in Calea Bucuresti no. 2 A, com. Balotesti, district of Ilfov". SC DAFIAQ INTERNATIONAL SRL was obliged to pay, partially or totally, the loan of USD 147.000 plus the related penalties, until the 31.12.2004, to Development & Financial Services Inc, the loan being contracted by SC PRISMATOWN SA.

Regarding DEVELOPMENT & FINANCIAL SERVICES INC, it should be mentioned the fact that the company's registered office is located in USA, Delaware State, 1013 Centre Road, Wilmington, New Castle District. It was registered in Delaware State, Secretary of State, Corporation Division, with no. 981084824. The main activity of this company is "the involvement in any juridical action or activity for which the companies can be organized, in line with the provisions of the General Law on Companies



8

of Delaware". Its representatives were OLGA HALIKIA and SPYROS VLASSOPOULOS, the first managers of the mentioned company.

Regarding the Loan Contract, without number, of the 19.06.2001, it should be mentioned that it was signed by SPYRIDON Ch. VLASSOPOULOS - as a vice-president and manager of DEVELOPMENT & FINANCIAL SERVICES INC. and by JOSE E. DE ALVARE - as a president and CA of SC PRISMATOWN SA. The object of the present contract was the loan of USD 147.000, conceded by the former company. The maturity date was the 19.07.2002. Until that date, no interest was collected.

In accordance with the provisions of the Loan Contract, if the loan was not totally paid until the 19.07.2002, a penalty of 1% per day should be collected, beginning with 19.09.2002, out of the unpaid balance at that moment.

By means of the amendment no. 1 to the Loan Contract, its period was extended to the 19.07.2005. The penalty of 1% per each delay day was valid for the period 20.07.2002-19.07.2003. It should raise each year by 0,5%, until the expiration date.

Regarding the Rent Contract between SC PRISMATOWN SA and SC DAFIAQ INTERNATIONAL SRL, it should be mentioned that it was signed on the 01.07.2004 (after BRD-GSG SA has filed the request of initiation of judicial reorganisation procedure on 25.06.2003 and before the issuing of the court order on the initiation of the present procedure - 28.07.2004). It was valid for 72 months (6 years), within the period: 01.01.2005 - 31.12.2010.

By means of these contracts, the money SC PRISMATOWN SA should have collected from the exploitation of the assets owned in line with



MARIN ANA MARIA
TRADUCĂTOR AUTORIZAT
AUTORIZAȚIE N. 4034

9

the declared main activity – rent of lands and commercial spaces, should have been redirected, for the creditors not to be able to follow them thorough the judicial liquidator, within the reorganization file. Those cash flows were to be collected by commercial companies belonging to JOSE E. DE ALVARE or supervised by him through his acquaintances.

Likewise, when SC PRISMATOWN SA was divided, by separating one part of company's patrimony and transferring it to SC SALONUL AUTO VICTORIA SA, JOSE E. DE ALVARE, supported by the company's shareholders, members of the board of directors of SC SALONUL AUTO VICTORIA SA, this is TEODORESCU ANNE MARIE – his wife, DINICĂ GABRIELA VIOLETA, TOMA ALINA GEORGIANA, TRANDAFIR GHEORGHE – his personal driver (the last one transferring subsequently his shares at this company to MANDA GABRIELA), registered the result of the division as a simple share capital increase of SC SALONUL AUTO VICTORIA SA. He did not allocated shares to the statutory stakeholders of SC PRISMATOWN SA.

Consequently, the shareholders of SC SALONUL AUTO VICTORIA SA assigned their shares to FLORIDA SHIPPING LINES LTD – an offshore company represented by JOSE E. DE ALVARE.

At the division moment (June, 2003), the stakeholders of SC PRISMATOWN SA were: the legal persons - DEVELOPMENT & FINANCIAL SERVICES INC. SUA - 18,2765%; MAC INVESTMENTS INCORPORATION SUA - 25,3082; FLORIDA SHIPPING LINES LTD SUA – 7,5490%; SC INDUSTRIAL EXPORT SA Bucharest – 25,8255%; SC SIF MUNTENIA SA Bucharest – 1,5098%; and the natural persons: PORA MIHAI – 1,6165%; LĂZĂRESCU ZAHARIA – 0,0060%; ȚÂNȚĂREANU ALEXANDRU CRISTIAN – 4,4905%; TEODORESCU

MARIN ANA MARIA
TRADUCĂTOR AUTORIZAT
AUTORIZAȚIE NR. 4034

10

ANNE MARIE – 3,6510%; NAR ANDREEA BIANCA FLORENTINA – 0,3973%; CONSTANTIN GEORGES – 6,1846%; MARTINESCU ANDREI MIHNEA – 0,0024%; VARGA GUSTAV LADISLAU – 0,1657%; UCIU GHEORGHE MARIN - 0,6623%; PAUNESCU TRAIAN - 1,0440%; POPESCU CORNELIU - 0,6623%; POPESCU IOAN PAUL - 0,9933%; ROSU ALEXANDRU - 0,3310%; BRATU FLORIN VASILE - 0,9933%,; BOTEA MIHAIL - 0,3310%.

As a consequence of SC PRISMATOWN SA division, through separating one part of company's patrimony and transferring it to SC SALONUL AUTO VICTORIA SA, none of the above mentioned stakeholders of SC PRISMATOWN SA received shares at SC SALONUL AUTO VICTORIA SA, corresponding to the block of shares owned within the divided company, SC PRISMATOWN SA.

By considering these issues, on the 12.09.2007, SC INDUSTRIAL EXPORT SA Bucharest - shareholder of SC PRISMATOWN SA, filed a criminal complaint against JOSE E. DE ALVARE on fraud, forged declarations, use of forgery and fraudulent management.

Subsequently, in 2007, within the liquidation procedure, FLORIDA SHIPPING LINES LTD, represented by JOSE E. DE ALVARE, sold the assets of the two companies (SC PRISMATOWN SA and SC SALONUL AUTO VICTORIA SA) to an identified purchaser - SC HORNBACH IMOBILIARE SRL, and collected the amount of RON 17.072.272,45, through the escrow account, opened at BCR SA - Lipscani Branch. In accordance with the request of the special manager, JOSE E. DE ALVARE, that amount belonged to TEODORESCU TUDORA, the mother-in-law of JOSE E. DE ALVARE.

11

It should be also mentioned that, although the bankruptcy procedure was closed both at SC PRISMA TOWN SA and at SC SALONUL AUTO VICTORIA SA, by selling the assets owned by the two companies, through the judicial liquidator, in 2007, two of the lands belonging to SC SALONUL AUTO VICTORIA SA, whose accounting value was EUR 373.395, were not liquidated. Subsequently, those two lands were transferred to the same person, TEODORESCU TUDORA – the mother-in-law of JOSE E. DE ALVARE.

At the same time, it should be stressed the fact that JOSE E. DE ALVARE, as a shareholder and president of the Board of Directors and, subsequently, as a special manager both of SC PRISMATOWN SA and of SC SALONUL AUTO VICTORIA SA, by signing, on the 11.05.2007, the purchase-selling contract for the movable and immovable property, owned by the two above-mentioned companies, with the tenderer SC HORNBACH IMOBILIARE SRL, for the overall amount of EUR 20 millions plus VAT, carried out the whole activity, so that BRD-GSG SA complete its claim only with the amounts that represented the price of the assets belonging to SC PRISMATOWN SA. Nevertheless, in line with the provisions of the division project, published in the Official Gazette no. 1198/14.05.2003, Part IV, the main part of the debt to BRD should be transferred to SC SALONUL AUTO VICTORIA SA.

In this respect, the amount corresponding to SC SIF MUNTENIA SA, minority shareholder of SC PRISMATOWN SA (1,51%) would decrease, as a consequence of the distribution of the price paid in the bankruptcy account.

*With a view to concluding the present case, we kindly ask the competent Authorities of the United States of America to proceed to the elaboration and carrying out of the following documents and activities:*

12



I.      to identify the holder of the bank account no. ███ opened at American Express Bank Ltd, located in World Financial Centre, Amex Tower, New York, NY 10285-2150 USA, as well as the persons empowered by him/her.

II.     to identify the transactions made from this bank account by the following natural and legal persons:

1. JOSE ENRIQUE DE ALVARE (BERENGUER), American citizen, son of Jose and Josefina, born on the ███ in ███ with the place of residence in ███ ███, holder of the passport with the Serial Number: ███ issued by the American Authorities on the 15.07.1997;

2. DINICĂ GABRIELA VIOLETA, ex FLOROIU, Romanian citizen, daughter of Mihai and Marioara, born on the ███ in Braşov, district of Braşov, with the place of residence in ███ ███ (Identity Card) with the Serial Number: ███, CNP ███

3. TOMA ALINA GEORGIANA, Romanian citizen, daughter of Constantin and Maria, born on the ███ in Bucharest, B-dul Gheorghe Şincai, no. 9, bl. 3, sc. B, et. 4, ap. 20, sector 4, holder of the CI, Serial Number: ███

4. TEODORESCU ANNE – MARIE, ex SOUMILAS, Romanian citizen, daughter of Vasile and Tudora, born on the ███ in Bucharest, with the place of residence in Bucharest, Str. Berzei no. 9, bl. B, et. 2, ap. 5, sector 1, holder of CI, Serial Number: ███ ███



MARIN ANA MARIA
TRADUCĂTOR AUTORIZAT
AUTORIZAȚIE nr. ████

13

5. TEODORESCU TUDORA, ex ZVORISTEANU, Romanian citizen, daughter of Florea and Cristina, born on the ▓▓▓▓▓ in Lita, district of Teleorman, with the place of residence in ▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓of BI (Identity Card), Serial Number:▓▓▓▓▓▓▓▓▓▓

6. SC PRISMATOWN SA ▓▓▓▓▓▓▓ Registration Number: ▓▓▓▓▓, with the registered office in Baloteşti, Calea Bucureşti, no. 2A, district of Ilfov, Romania;

7. SC SALONUL AUTO VICTORIA SA ▓▓▓▓▓▓ Registration Number: ▓▓▓▓▓ with the registered office in Baloteşti, Calea Bucureşti, no. 2A, district of Ilfov, Romania;

8. SC DAFIAQ IMOBILIAR SRL ▓▓▓▓▓▓ Registration Number: ▓▓▓▓▓ with the registered office in Baloteşti, Calea Bucureşti – Prisma Shopping City, FS8 Stand, district of Ilfov, Romania;

9. SC DAFIAQ COMERCIAL SRL ▓▓▓▓▓▓ Registration Number: ▓▓▓▓▓ with the registered office in Baloteşti, Calea Bucureşti, Prisma Shopping City, FS8 Stand, district of Ilfov, Romania;

10. SC DAFIAQ INTERNATIONAL SRL ▓▓▓▓▓Registration Number: ▓▓▓▓▓ with the registered office in Voluntari, Sos. Iancu Nicolae, no. 113D, district of Ilfov, Romania;

11. SC IMOBILIAR INVEST EXPERT SRL ▓▓▓▓▓▓▓ Registration Number: ▓▓▓▓▓ with the registered office in Bucharest, Str. Cuza Voda, no. 104, sector 4, Romania;

12. FLORIDA SHIPPING LINES LTD, with Company Registration Certificate registered in Delaware State, Secretary of State - Corporation Division, on the 05.11.1991, 9:00 hours, no. 691309009 –



14

█████ and with the registered office in Delaware, Wilmington, 1013 Centre Road, New Castle District, DE 19805, USA;

13. LANDMARK INTERNATIONAL L.L.C., with the registered office in Delaware, Wilmington, 1013 Centre Road, New Castle District, DE 19805, USA;

14. DEVELOPMENT & FINANCIAL SERVICES INC, with Company Registration Certificate registered in Delaware, Secretary of State, Corporation Division, no. █████ and the registered office in Delaware, Wilmington, 1013 Centre Road, New Castle District, DE 19805, USA.

In this respect, all documents related to the carrying out of these operations shall be transmitted, by specifying the final beneficiary (for the situation in which the transferred amounts are sent subsequently to other natural and legal persons) and the documents that generate them, in certified copy.

III.   Operative Data on the involvement in illegal activities of JOSE ENRIQUE (BERENGUER) DE ALVARE, American citizen, son of Jose and Josefina, born on the █████ in La Habana, Cuba, holder of the passport, Serial Number: █████ issued by the American Authorities on the 15.07.1997;

IV.   The history of the shareholding of the following companies: FLORIDA SHIPPING LINES LTD, LANDMARK INTERNATIONAL L.L.C. and DEVELOPMENT & FINANCIAL SERVICES INC (with the identification data of point II), from the creation date up to now, specifying the following aspects:



15

a. the full identification data of these companies;

b. the control on the shares issued by these companies;

c. the identity data of the persons who owned / own shares within these companies;

d. the number of the owned shares and the holding period;

e. the transmission of rights relating to the shares;

f. data on the present status of these companies.

If these companies have no activity (they were winded-up, liquidated, etc.), we kindly ask you to transmit the identity data of the person/persons who has/have received the remaining assets, as well as the documents, by means of which the mentioned persons become their beneficiaries.

V.    to identify the commercial and financial operations carried out between FLORIDA SHIPPING LINED LTD and LANDMARK INTERNATIONAL L.L.C., of the operations carried out by these companies with the other legal and natural persons, mentioned at point II, as well as with SC HORNBACH IMOBILIARE SRL, company registered in Romania, with the registered office in Bucharest, Sector 1, Str. Sevastolpol no. 13-17, ap. 106, registered at the National Trade Register Office, no. ███████ Fiscal Registration Code: ███████. At the same time, there should be transmitted the documents that generated these operations;

VI.    to identify the bank accounts opened and / or used by the persons mentioned at point II within other banking and financial institutions of USA; to transmit the history of these bank accounts, as well as the documents in proof on the deposits made in these bank account and the transferee of

16



these amounts to other natural or legal persons (commercial companies).

The present document is urgent and secret.

If you need any additional information, you may contact Mrs. Prosecutor CREȚU CODRUȚA, Telephone Number: 0040 745079991, 0040 0213193804, e-mail: codrutacretu@yahoo.com.

We thank you in advance and take this opportunity to express our highest appreciation to you and to assure you of our total support in the case of any similar assistance request remitted by you.

### DIRECTORATE CHIEF PROSECUTOR
*Codruț Olaru*



17

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

IN RE LETTER OF REQUEST       )
FROM ROMANIA                  )
IN THE MATTER OF              )        Misc No. 08-
DEALVARE, ET AL               )
                        ORDER

     Upon application of the United States of America; and upon examination of a letter of request from Romania whose authorities are seeking certain testimony and information from individuals which may be found in this District, for use in a judicial proceeding in Romania and the Court being fully informed in the premises, it is hereby

     **ORDERED**, pursuant to Title 28, United States Code, Section 1782, that David L. Hall, Assistant United States Attorney, hereby is appointed as Commissioner of this Court and is hereby directed to execute the letter of request from Romanian authorities as follows:

     1. to take such steps as are necessary, including issuance of commissioner's subpoenas to be served on persons within the jurisdiction of this Court, to collect the evidence requested;

     2. provide notice with respect to the collection of evidence to those persons identified in the requests as parties to whom notice should be given (and no notice to any other party shall be required);

3. adopt procedures to collect the evidence requested consistent with its use as evidence in a proceeding before a Court in Romania, which procedures may be specified in the request or provided by the Romanian authorities;

4. seek such further orders of this Court as may be necessary to execute this request; and

5. certify and submit the evidence collected to the Office of International Affairs, Criminal Division, United States Department of Justice, or as otherwise directed by that office for transmission to the Romanian authorities.

IT IS FURTHER ORDERED that, in collecting the evidence requested, the Commissioner may be accompanied by persons whose presence or participation is authorized by the Commissioner.

Dated:  This _____ day of _____, 2008.

_____
United States District Court Judge

2